## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN

BENTELER AUTOMOTIVE CORPORATION,
a Delaware corporation,

  Plaintiff,

v.

MITSUI & CO. (U.S.A), INC.,
a New York corporation,

  Defendant.

Case No. 2023-  -

Hon.

| |
|---|
| Linda M. Watson (P45320)<br>David W. Centner (P43071)<br>Attorneys for Plaintiff<br>CLARK HILL PLC<br>200 Ottawa NW, Suite 500<br>Grand Rapids, MI 49503<br>248.988.5881<br>lwatson@clarkhill.com<br>dcentner@clarkhill.com |

## COMPLAINT AND JURY DEMAND

Plaintiff, BENTELER Automotive Corporation ("BENTELER" or "Plaintiff"), by and through its counsel, Clark Hill PLC, for its Complaint against Defendant, Mitsui Co. (U.S.A.), Inc. ("Mitsui" or "Defendant"), states as follows:

### The Parties, Jurisdiction and Venue

1. BENTELER is a Delaware corporation with its principal place of business in Auburn Hills, Michigan, and manufacturing and assembling facilities in Grand Rapids, Michigan.

2. Mitsui is a New York corporation with its principal place of business in Richfield, Ohio.

3. This Court has subject matter jurisdiction under 28 U.S.C. §1332 because all parties are diverse from one another and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. This court has personal jurisdiction over Mitsui because it regularly conducts business in Michigan, including under the contract documents at issue in this action which also provide for jurisdiction in Michigan ("Contract Documents"). Defendant is in possession of the Contract Documents and, therefore, the Contract Documents are not attached to this Complaint.

5. Venue is proper in this Court under 28 USC §1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District and Mitsui is subject to personal jurisdiction in this District. Venue is proper in this District also because Mitsui consented to venue under the parties' Contract Documents.

## General Allegations

**A.    The parties' relationship.**

6. BENTELER is a world leader in manufacturing fuel manifolds and lines for high-pressure injection systems and one of the leading suppliers of exhaust gas recirculation systems. It is also a global supplier of exhaust manifolds.

7. BENTELER's customers for these manifolds include General Motors and Toyota.

8. BENTELER sourced parts necessary to build manifolds from Mitsui.

9. Mitsui holds itself out as a leading value chain provider, specializing in trading of steel products, managing inventory and process coordination, among other things.

10. As it relates to the supply chain at issue in this case, BENTELER is known in the automotive industry as a "Tier 1 supplier" and Mitsui is a "Tier 2 supplier."

11.     The parts at issue in this case that were supplied by Mitsui to BENTELER were uniquely designed, engineered and manufactured.

### B.    The parties' contracts.

12.     Starting in 2011, Mitsui entered into a series of fixed-price requirement contracts to supply BENTELER with these parts specifically to be used in BENTELER'S manifolds for the production life of a vehicle program.  These Contract Documents are more formally named "Scheduling Agreements" and they include Procurement Conditions which set forth all of the terms and conditions that govern the parties' relationship.

13.     The Contract Documents provide, inter alia, that (i) prices in the contract are firm and that Mitsui may not unilaterally increase its prices; (ii) Mitsui shall supply parts for all of BENTELER'S requirements for the life of the program; and (iii) Mitsui shall maintain production tooling for the life of the part, which includes up to 15 years after the end of production for service parts.

14.     The Contract Documents provide that "[Mitsui] must provide defect-free products/services 100% on time."

15.     And, with respect to the latter, the Contract Documents provide that Mitsui is in default if it "breaches, repudiates, or threatens to breach any term in the contract . . . between [Mitsui] and [BENTELER], . . . , including but not limited to, failure to deliver goods or services in accordance with [BENTELER'S] required quality, quantity and terms."

### C.    Mitsui breaches the parties' contracts.

16.     Mitsui supplied these parts to BENTELER under the Contract Documents for years and was BENTELER'S only supplier for these parts.

17. Both parties to the Contract Documents knew that any interruption in the supply of Mitsui's parts to BENTELER would impact the supply of manifolds by BENTELER to its customers and ultimately cause the interruption and breakdown of the production of vehicle programs at vehicle manufacturers such as General Motors and Toyota.

18. BENTELER and its customers relied on Mitsui to perform its obligations under the Contract Documents so that each party in the supply chain could timely perform their respective obligations to customers and consumers.

19. At all times Mitsui fully understood the ripple effect its failure or refusal to ship parts would have on this supply chain.

20. On or about February 14, 2022, Mitsui advised BENTELER that it would discontinue supplying all of the parts to BENTELER after May 1, 2022.

21. Mitsui's notice of refusal to continue to supply parts to BENTELER was a breach of the parties' Contract Documents.

22. BENTELER advised Mitsui that its actions constituted a breach of the parties' Contract Documents and that the breach would cause damages to BENTELER, particularly if it had to re-source production to another supplier without a bank or inventory of parts.

23. Ultimately, in order to re-source production of the parts to an alternative supplier, BENTELER needed to (i) find a new source through an RFQ process; (ii) procure tooling; (iii) have the new supplier implement engineering and validation necessary to produce the parts; (iv) require the new supplier to free up capacity for the volume; (v) secure raw materials; (vi) obtain validation and production certifications; and (vii) ramp up manufacturing operations to production levels to meet production requirements.

24. BENTELER demanded that Mitsui, at a minimum and in order to mitigate damages, provide a sufficient bank of parts to meet its customers' requirements during the transition to a new supplier.

25. Mitsui, however, advised BENTELER it would not be able to supply a bank of parts to prevent any interruption in BENTELER'S supply of parts to its customers GM and Ford.

26. Indeed, soon thereafter, Mitsui stopped supplying to BENTELER its parts in breach of the parties' Contract Documents.

27. Mitsui also failed to supply BENTELER with a bank or inventory of parts to ensure the transition to an alternative supplier in breach of the parties' Contract Documents.

28. BENTELER was forced, in a compressed amount of time, to identify and transition the business to another supplier. It immediately sent out request for quotations to potential suppliers, selected a new supplier and went through the process outlined above to get the new supplier production-ready.

29. As a result of Mitsui's breaches, BENTELER was forced to enter into a contractual arrangement with a new supplier and to pay a price for the parts at a higher price than what it was contractually obligated to pay Mitsui. It was also forced to pay additional fees, costs and expenses associated with expediting raw material and parts so that it would not be in breach of its contractual obligation to supply exhaust components to GM and Toyota.

## COUNT I – BREACH OF CONTRACT

30. BENTELER incorporates its preceding allegations.

31. The Contract Documents between BENTELER and Mitsui are valid and binding.

32. BENTELER has satisfied all of its obligations to Mitsui under the Contract Documents.

33. Mitsui is in breach of its obligations to BENTELER under the Contract Documents because it has ceased supplying BENTELER with its requirements of the parts and failed to provide a sufficient bank of parts.

34. As a result of Mitsui's breach and in accordance with the parties' Contract Documents and statutory and common law, BENTELER has suffered past and future damages and is entitled to recover from Mitsui the cost to cover at the increased price over the duration of the applicable vehicle programs, costs incurred to re-source the parts, as well as any and all compensatory, incidental and consequential damages incurred and attorneys' fees and costs.

35. As a direct and proximate cause of Mitsui's breach, BENTELER has incurred substantial damages in the millions of dollars.

## COUNT II - INDEMNIFICATION

36. BENTELER incorporates by reference all preceding paragraphs.

37. Pursuant to Section 10 of the Procurement Conditions of the Contract Documents, Mitsui "agree[d] to indemnify, hold harmless and defend [BENTELER] … from and against any loss, liabilities, costs, expenses … arising from [Mitsui's] breach of contract . . . ."

38. Mitsui breached the Contract Documents through its refusal to supply parts, forcing BENTELER to re-source the parts through another supplier after suffering losses, liabilities and increased costs and expenses.

39.    Pursuant to the Contract Documents, Mitsui must indemnify BENTELER for all damages it has sustained as a result of Mitsui's performance, including BENTELER'S costs and attorneys' fees in seeking this relief.

**WHEREFORE,** Plaintiff BENTELER requests this Honorable Court enter a judgment in favor of BENTELER and against Mitsui and award BENTELER damages in excess of $75,000.00, including all costs, expenses and attorney fees incurred by BENTELER all such other relief in BENTELER'S favor as this Court may deem just, equitable, or appropriate under the circumstances.

Respectfully Submitted,

CLARK HILL PLC

*/s/ Linda M. Watson*
LINDA M. WATSON (P45320)
DAVID W. CENTNER (P43071)
Clark Hill PLC
200 Ottawa NW, Suite 500
Grand Rapids, MI 49503
(248) 988-5881
Attorneys for Plaintiff

Date:  January 26, 2023

## **DEMAND FOR JURY TRIAL**

NOW COMES Plaintiff, BENTELER, by and though its attorneys, Clark Hill, PLC, and hereby demands a trial by jury in the above-entitled cause.

                                                       Respectfully Submitted,

                                                       CLARK HILL PLC

                                                       */s/ Linda M. Watson*
                                                       LINDA M. WATSON (P45320)
                                                       DAVE W. CENTNER (P43071)
                                                       Clark Hill PLC
                                                       200 Ottawa NW, Suite 500
                                                       Grand Rapids, MI 49503
                                                       (248) 988-5881
                                                       Attorneys for Plaintiff

Date: January 26, 2023